ENTERED
CLERK. U S DISTRICT COURT

DEC - 8 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

FILED
CLERK, U S DISTRICT COURT

DEC - 8 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Priority ✓
Send ✓
Enter ✓
Closed ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LES JANKEY, an individual; and DISABILITY RIGHTS, ENFORCEMENT, EDUCATION, SERVICES: HELPING YOU HELP OTHERS, a California public benefit corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BEACH HUT; HERMOSA COURTYARD LLC, a limited liability company; VICTOR ROMERO and ANGELA ROMERO, a married partnership dba BEACH HUT,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV 05-3856 SVW (JTLx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [13] |

## I.   INTRODUCTION

Plaintiffs Les Jankey and Disability Rights, Enforcement, Education Services ("DREES") allege that Defendants Beach Hut, Hermosa Courtyard LLC, and Victor and Angela Romero (collectively, "Defendants") violated Jankey's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 et seq., Sections 54, 54.1 and 54.3 of the California Civil Code (the "Disabled Persons

Act" or "DPA"), Section 19955 of the California Health and Safety Code, and the Unruh Civil Rights Act.

Defendants moved to dismiss (1) the state causes of action as ill-suited to supplemental jurisdiction; and (2) Plaintiff DREES for lack of standing.

As further discussed below, the Court GRANTS the motion on both grounds.

## II.   FACTS[1]

Jankey is disabled and confined to a wheelchair.  On or about January 31, 2005, Jankey visited the Beach Hut, a restaurant in Hermosa Beach.  A raised concrete pad prevented Jankey's easy access to the Beach Hut.  Jankey used his wheelchair to jump the concrete pad, sustaining injuries.  The concrete pad was equivalent to a 6-inch curb.  After eating at the Beach Hut, Jankey entered the men's bathroom but was unable to use it because the bathroom lacked handrails and the toilet was low.  Upon leaving, Jankey again navigated the concrete pad, suffering more stress and pain.  On or about February 2, 2005, Jankey revisited the Beach Hut and a replay of the January 31 visit ensued.

DREES is a non-profit organization with a mission of helping disabled people.  Jankey is a member of DREES.

Jankey and DREES are seeking (1) injunctive relief and attorneys' fees and costs under the ADA; (2) injunctive relief, statutory damages, punitive damages, costs, prejudgment interest, and general and compensatory damages under the DPA; (3) injunctive relief, attorneys' fees and costs, prejudgment interest, and general

---

[1] These facts are taken from the complaint.

1   and compensatory damages under Section 19955 of the California Health

2   and Safety Code; and (4) statutory damages, attorneys' fees and

3   costs, punitive damages, and prejudgment interest under the Unruh

4   Civil Rights Act.

5   **III.       DISCUSSION**

6       Defendants raise two issues in their motion to dismiss: (1)

7   whether the Court should exercise supplemental jurisdiction over

8   Plaintiffs' state claims; and (2) whether Plaintiff DREES has

9   standing.

10       **A.    Supplemental Jurisdiction**

11       The issue before the Court is whether it should exercise its

12   discretion and decline supplemental jurisdiction over Jankey's state

13   law claims.  Defendants argue that (1) the three state claims

14   predominate over the federal ADA claim; (2) the state claims raise

15   novel issues of state law; and (3) Plaintiffs are forum shopping.  In

16   response, Plaintiffs cite <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715

17   (1966), and contend that the state law claims are based on the same

18   nucleus of operative facts and therefore judicial economy recommends

19   that they all be heard together.  Plaintiffs also argue that their

20   main goal is injunctive relief, not monetary damages.

21       Title 28 U.S.C. § 1367 governs a federal court's exercise of

22   supplemental jurisdiction.  Section 1367(a) provides that "in any

23   civil action of which the district courts have original jurisdiction,

24   the district courts shall have supplemental jurisdiction over all

25   other claims that are so related to claims in the action within such

26   original jurisdiction that they form part of the same case or

27   controversy under Article III of the United States Constitution."  28

28

3

1  U.S.C. § 1367(a).  Under § 1367(c), however, a district court has the

2  discretion to decline to exercise supplemental jurisdiction over a

3  state claim if

4      (1) the claim raises a novel or complex issue of State

5      law,

6      (2) the claim substantially predominates over the claim

7      or claims over which the district court has original

8      jurisdiction,

9      (3) the district court has dismissed all claims over

10      which it has original jurisdiction, or

11      (4) in exceptional circumstances, there are other

12      compelling reasons for declining jurisdiction.

13  28 U.S.C. § 1367(c)(1)-(4).  As interpreted by the Ninth Circuit, §

14  1367 mandates the exercise of supplemental jurisdiction pursuant to §

15  1367(a), unless such exercise is prohibited by § 1367(b) or one of

16  the specifically enumerated exceptions set forth in § 1367(c)

17  applies.  Executive Software N. Am., Inc. v. U.S. Dist. Court for the

18  Cent. Dist. of Cal., 24 F.3d 1545, 1555-56 (9th Cir. 1994).  Thus,

19  "unless a court properly invokes a § 1367(c) category in exercising

20  its discretion to decline to entertain pendent claims, supplemental

21  jurisdiction must be asserted."  Id. at 1556.

22      Defendants argue that three of the exceptions set forth in §

23  1367(c) apply here.  First, the Defendants argue that Jankey's claims

24  under the Unruh Act and the DPA raise novel or complex unsettled

25  issues of state law.  Second, Defendants argue that Plaintiffs' state

26  law claims for damages "substantially predominate" over the ADA claim

27  for injunctive relief.  Third, Defendants appear to argue that there

28

4

1  are "other compelling reasons" for declining to exercise supplemental

2  jurisdiction.  To determine the validity of these arguments, it is

3  necessary to briefly review the ADA, the Unruh Act, and the DPA.

4          **1.  The ADA**

5      Jankey's ADA claim arises under Title III of the ADA.  Title III

6  prohibits discrimination "on the basis of disability in the full and

7  equal enjoyment of the goods, services, facilities, privileges,

8  advantages, or accommodations of any place of public accommodation by

9  any person who owns, leases (or leases to), or operates a place of

10  public accommodation."  42 U.S.C. § 12182(a).  A "restaurant, bar, or

11  other establishment serving food or drink" is included within the

12  definition of a "public accommodation" under Title III.  42 U.S.C. §

13  12181(7)(B).

14      The only remedy available to a private litigant under Title III

15  is injunctive relief.  42 U.S.C. § 12188(a);[2] see also Wander v. Kaus,

16  304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under

17  Title III of the ADA--only injunctive relief is available for

18  violations of Title III."); Fischer v. SJB-P.D. Inc., 214 F.3d 1115,

19

20

---

21

22  [2] Section 12188(a)(1) provides that the remedies available under Title
    III are those set forth in 42 U.S.C. § 2000a-3(a).  42 U.S.C. §

23  12188(a)(1).  Section 2000a-3(a) provides:
        Whenever any person has engaged or there are reasonable

24        grounds to believe that any person is about to engage
          in any act or practice prohibited by section 2000a-2 of

25        this title, a civil action for preventative relief,
          including an application for a permanent or temporary

26        injunction, restraining order, or other order, may be
          instituted by the person aggrieved . . . .

27  42 U.S.C. § 2000a-3.  The Supreme Court has held that a plaintiff
    suing under § 2000a-3(a) cannot recover damages.  Newman v. Piggie

28  Park Enters., 390 U.S. 400, 401-02 (1968).

1120 (9th Cir. 2000) ("Monetary relief is not an option for private
individuals under Title III of the ADA.").

### 2. The Unruh Act

The Unruh Act provides that "[a]ll persons within the
jurisdiction of this state are free and equal, and no matter what
their sex, race, color, religion, ancestry, national origin,
disability, or medical condition are entitled to the full and equal
accommodations, advantages, facilities, privileges, or services in
all business establishments of every kind whatsoever."  Cal. Civ.
Code § 51(b).  In 1992 the Unruh Act was amended to provide that "[a]
violation of the right of any individual under the Americans with
Disabilities Act of 1990 (Public Law 101-336) shall also constitute a
violation of this section."  Cal. Civ. Code § 51(f).

The Unruh Act authorizes an award of statutory damages in an
amount three times the amount of actual damages but in no case less
than four thousand dollars ($4,000) "for each and every offense."
Cal. Civ. Code § 52(a).  The California Supreme Court has held that
California Civil Code § 52 authorizes an award of the minimum
statutory damages amount regardless of the plaintiff's actual
damages.  Koire v. Metro Car Wash, 40 Cal. 3d 24, 33 (1985).  The
Ninth Circuit has also reached this conclusion.  Botosan v. Paul
McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000) (holding that proof
of actual damages is not a prerequisite to recovery of statutory
minimum damages under California Civil Code § 52).

### 3. The DPA

The DPA provides that "[i]ndividuals with disabilities or
medical conditions have the same right as the general public to the

1  full and free use of the streets, highways, sidewalks, walkways,

2  public buildings, medical facilities, including hospitals, clinics,

3  and physician's offices, public facilities, and other public places."

4  Cal. Civ. Code § 54(a).  It further provides that "[i]ndividuals with

5  disabilities shall be entitled to full and equal access . . . to

6  accommodations, advantages, facilities . . . places of public

7  accommodation, amusement, or resort, and other places to which the

8  general public is invited . . . ."  Cal. Civ. Code § 54.1(a)(1).

9  Like the Unruh Act, the DPA provides that "[a] violation of the right

10 of an individual under the Americans with Disabilities Act of 1990

11 (Public Law 101-336) also constitutes a violation of this section."

12 Cal. Civ. Code § 54(c); see also Cal. Civ. Code § 54.1(d) ("A

13 violation of the right of an individual under the Americans with

14 Disabilities Act of 1990 (Public Law 101-336) also constitutes a

15 violation of this section, and nothing in this section shall be

16 construed to limit the access of any person in violation of that

17 act.").

18      The DPA authorizes an award of damages in an amount three times

19 the amount of actual damages but in no case less than one thousand

20 dollars ($1,000) "for each offense."  Cal. Civ. Code § 54.3.  A

21 plaintiff need not show actual damages in order to recover the

22 minimum amount.  Donald v. Café Royale, Inc., 218 Cal. App. 3d 168,

23 180-81 (1990).  However, a plaintiff must establish that she was

24 denied equal access on the particular occasion in order to recover.

25 Id. at 183.  Finally, the DPA prevents a plaintiff from recovering

26 under both the DPA and the Unruh Act.  California Civil Code §

27 54.3(c) provides that "[a] person may not be held liable for damages

28

1  pursuant to both this section and Section 52 for the same act or

2  failure to act."  Cal. Civ. Code § 54.3(c).

3           **4. California Health & Safety Code §§ 19955 et seq.**

4     California Health & Safe Code § 19956 mandates that all public

5  accommodations constructed in California comply with the requirements

6  of Government Code § 4450 et seq.  Cal. Health & Safety Code § 19956;

7  see also People ex rel. Deukmejian v. CHE, Inc., 150 Cal. App. 3d

8  123, 132 (1984); Schonfeld v. City of Carlsbad, 978 F. Supp. 1329,

9  1331 n.2 (S.D. Cal. 1997).  The purpose of § 19956 is "to insure that

10  public accommodations or private facilities constructed in this state

11  with private funds adhere to the provisions [of Government Code §§

12  4450 et seq.]."  Cal. Health & Safety Code § 19955.  However, § 19956

13  applies to existing public accommodations constructed before July 1,

14  1970 only "when any alterations, structural repairs, or additions are

15  to made . . . ."  Cal. Health & Safety Code § 19959.  Moreover, even

16  when alterations, structural repairs, or additions are made, § 19956

17  applies only to the "area of specific alteration, structural repair

18  or addition and shall not be construed to mean that the entire

19  building or facility is subject to this chapter."  Id.

20     A plaintiff may not recover damages pursuant to § 19956.

21  Donald, 218 Cal. App. 3d at 182-83.

22           **5. Analysis**

23     ***Novel Issue of State Law.***  The remedial provisions of the Unruh

24  Act and the DPA are not crystal clear.  The phrases "for each and

25  every offense" and "for each offense" are ambiguous.  Indeed, two

26  district courts which have grappled with this language have come to

27  opposing conclusions.  In Botosan v. Fitzhugh, 13 F. Supp. 2d 1047,

28

               8

1   1051-52 (S.D. Cal. 1998), the court held that the phrases "for each

2   and every offense" and "for each offense" authorize an award of daily

3   damages for each day the plaintiff is deterred from visiting the

4   defendant's facility (i.e., an award of $1,000 or $4,000 per day from

5   the date of the plaintiff's initial visit until the date the facility

6   is brought into compliance).  By contrast, the court in <u>Doran v.</u>

7   <u>Embassy Suites Hotel</u>, 2002 WL 1968166, at *4-6 (N.D. Cal. Aug. 26,

8   2002), found that daily damages are not available under the Unruh Act

9   and the DPA.  There is, unfortunately, no California state court case

10  resolving the conflict between these two cases.  This Court and

11  three other courts in the Central District have previously found the

12  meaning of this language to be sufficiently unsettled as to merit

13  declining supplemental jurisdiction.  <u>See</u> <u>Molski v. Mandarin Touch</u>

14  <u>Restaurant</u> and <u>Jankey v. Yang Chow Restaurant Pasadena</u>, 359 F. Supp.

15  2d 924, 936-37 (C.D. Cal. 2005); <u>Molski v. EOS Estate Winery</u>, No. CV

16  03-5880 GAF (C.D. Cal. entered July 15, 2005); <u>Jankey v. Poop Deck</u>,

17  No. CV 04-9741 RSWL (AJWx) (C.D. Cal. entered July 25, 2005); <u>Molski</u>

18  <u>v. Hitching Post I Rest., Inc.</u>, No. CV 04-1077 SVW (RNBx) (C.D. Cal.

19  entered May 25, 2005).

20      Because of the absence of controlling California case law, and

21  because the two federal courts which have addressed the issue have

22  come to opposing conclusions, the Court finds that the damages

23  provisions of the Unruh Act and DPA raise complex issues of unsettled

24  state law which are better left to the California courts to resolve.

25      ***State Law Claims "Substantially Predominate" Over Federal Law***

26  ***Claims.***  Defendants argue that Plaintiffs' state law claims for

27  damages "substantially predominate" over the ADA claim for injunctive

28

9

1  relief.  While Defendants do not elaborate this point, it can be

2  inferred that Defendants are concerned that if the statutory damages

3  award were calculated at $4,000 per day, the dollar amount would be

4  staggering for a small business like the Beach Hut (the violation

5  allegedly began in January 2005, so even a conservative counting of

6  the days from then until final resolution would achieve damages of

7  over $1 million).  Additionally, trying the state claims could, as a

8  practical matter, consume more of the Court's time and resources than

9  trying the federal claim.

10     In <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966), the

11  Supreme Court indicated that state issues may substantially

12  predominate "in terms of proof, of the scope of the issues raised, or

13  of the comprehensiveness of the remedy sought . . . ."  While <u>Gibbs</u>

14  is a pre-28 U.S.C. § 1367 case, the Ninth Circuit has indicated that

15  the § 1367(c) inquiry should be informed by <u>Gibbs</u>.  <u>Acri v. Varian</u>

16  <u>Assocs., Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997).

17     Judged in terms of the <u>Gibbs</u> criteria, Plaintiffs' state law

18  claims substantially predominate over the ADA claim.  Although the

19  burdens of proof and standards of liability under the ADA and the

20  Unruh Act are identical where the plaintiff predicates his Unruh Act

21  claim on an ADA violation, the statutory damages available to the

22  plaintiff under the Unruh Act substantially predominate over the

23  relief available under the ADA.  Under the per violation standard,

24  Jankey can recover a minimum of $4,000 per violation.  By contrast,

25  Jankey is entitled to only injunctive relief and attorneys' fees

26  under the ADA.  Given this disproportion, the Court concludes that

27  Jankey's state claims substantially predominate over his federal

28

1    ones.  <u>Cf.</u> <u>Rivera Flores v. P.R. Tel. Co.</u>, 776 F. Supp. 61, 71-72,

2    (D.P.R. 1991) (declining to exercise supplemental jurisdiction over

3    plaintiff's non-federal claims because, among other things, the

4    plaintiff was seeking six million dollars in damages for the tort of

5    intentional infliction of emotional distress but only injunctive

6    relief and backpay under the Rehabilitation Act).  Moreover, the

7    Court finds that interpreting the phrases "for each and every

8    offense" and "for each offense" in the Unruh Act and the DPA would

9    likely consume far more of the Court's time and resources than a

10   trial on the merits of Jankey's ADA claim alone.  For this reason,

11   too, Jankey's state claims substantially predominate over his ADA

12   claim.

13       ***Economy, Convenience, Fairness, and Comity.***  As noted above, the

14   Ninth Circuit has indicated that the § 1367(c) inquiry should be

15   "informed by the <u>Gibbs</u> values of economy, convenience, fairness, and

16   comity."  <u>Acri</u>, 114 F.3d at 1001.  Thus, these are among the "other

17   compelling reasons" for which a court may decline to exercise

18   supplemental jurisdiction.

19       In this case, Defendants argue that discouraging forum-shopping

20   is a compelling reason for declining to exercise supplemental

21   jurisdiction.  While this Court has previously found that another

22   plaintiff, Jarek Molski, impermissibly engaged in forum shopping by

23   bringing suits in federal court, the claim in this case is weaker.

24   Jankey is a serial ADA plaintiff, but not to the same extent as

25   Molski.  A finding of forum shopping, however, is unnecessary for the

26   Court to decline to exercise supplemental jurisdiction.

27

28

1   Plaintiffs urge that judicial economy counsels against declining

2   supplemental jurisdiction.[3]   While it is true that the causes of

3   action all arise out of the same basic facts, the predominance of the

4   state law issues and the unsettled state law issues outweigh the

5   concern regarding economy.

6   Comity is an important tenet in the federal system and weighs

7   even more heavily when the laws at issue have not been definitively

8   interpreted by the state courts.  Cf. Kazor v. Gen. Motors Corp., 585

9   F. Supp. 621, 623 (E.D. Mich. 1984) (finding that remand was

10  warranted where no federal claims remained because remand is

11  "particularly helpful in procuring a more definitive reading of state

12  law where, as here, there is not a substantial amount of [state]

13  authority interpreting the applicable provisions of [the] state

14  statute").  In such circumstances, there are compelling reasons for

15  declining jurisdiction.  As the Court in Gibbs recognized,

16  "[n]eedless decisions of state law should be avoided both as a matter

17  of comity and to promote justice between the parties, by procuring

18  for them a surer-footed reading of applicable law."  Gibbs, 383 U.S.

19  at 726 (emphasis added).

20  _____

21  [3] At the November 14, 2005 hearing on this matter, Plaintiffs' counsel
    complained that when plaintiffs file similar cases in state court,
22  the defendants remove the cases to federal court, and plaintiffs are
    then subjected to motions like this one.  While the Court is
23  sympathetic to Plaintiffs' complaint about being bounced between
    courts, the Court is nonetheless convinced that the state claims
24  predominate and are novel enough that the state courts are the best
    decision-making body for the claims.  The Court also notes that the
25  relief available to plaintiffs under the federal ADA and the state
    statutes is identical.  While plaintiffs are certainly free to plead
26  ADA violations as well as state law violations, in order to avoid
    having their state cases removed to federal court, Plaintiffs might
27  consider not attaching the extraneous ADA cause of action when
28  litigating in state court.

1    Because the California courts should be given an opportunity to

2    interpret whether the phrases "for each and every offense" and "for

3    each offense," and because the parties themselves are entitled to a

4    surer-footed interpretation of California's disability laws,

5    compelling reasons exist to decline supplemental jurisdiction over

6    Plaintiffs' state law claims.

7        **2.   DREES' Standing**

8        DREES is an organization representing the interests of disabled

9    people and Jankey is a member of DREES.  An organization may have

10   standing to bring suit on behalf of its members if (1) its members

11   would otherwise have standing to sue in their own right, (2) the

12   interests it seeks to protect are germane to the organization's

13   purpose, and (3) the participation of individual members in the

14   lawsuit is not required.  Hunt v. Washington Apple Advertising

15   Comm'n, 432 U.S. 333, 343 (1977).  The first two requirements for

16   organizational standing are constitutional; the third is prudential.

17   Or. Advocacy Ctr v. Mink, 322 F.3d 1101, 1109 (2003).  Because the

18   Court is dismissing the state claims, the only remaining claim is for

19   injunctive relief under the ADA.  Jankey is a member of DREES and

20   Defendants have not made a motion regarding Jankey's standing;[4] making

21   restaurants ADA-compliant is within DREES's purpose; and it is

22   unnecessary for an injured individual to participate in a suit for

23   injunctive relief.  Therefore, DREES appears to meet the basic

24   requirements for organizational standing.

25

26   [4] Defendants argue that DREES lacks standing because there is a

27   question of Jankey's standing.  However, Defendants do not argue that
     Jankey should be dismissed for lack of standing, so this argument

28   fails.

                                    13

1    However, Defendants point to a prudential standing doctrine and

2    argue that DREES should be dismissed because Jankey is a better

3    litigant than DREES for Jankey's claims.  As another court in the

4    Central District has remarked when faced with the question of

5    prudential standing of DREES, "the individual plaintiff is in the

6    best position to litigate his own claims," <u>Molski v. Kahn Winery</u>, 381

7    F. Supp. 2d 1209, 1210 (C.D. Cal. 2005); <u>see also</u> <u>Allen v. Wright</u>,

8    468 U.S. 737, 751 (1984) ("general prohibition on a litigant's

9    raising another person's legal rights"); <u>Gladstone, Realtors v.</u>

10   <u>Village of Bellwood</u>, 441 U.S. 91, 100 (1979) ("Even when a case falls

11   within these constitutional boundaries, a plaintiff may still lack

12   standing under the prudential principles by which the judiciary seeks

13   . . . to limit access to the federal courts to those litigants best

14   suited to assert a particular claim").  Here, Jankey, the allegedly

15   injured individual, is litigating his own claim and Jankey's and

16   DREES's prayers for relief are identical.[5]  Out of respect for the

17   concerns underlying the standing doctrine and to ensure that the case

18   is appropriately focused on the injuries asserted by Jankey, the

19   Court finds that DREES should be dismissed as a Plaintiff pursuant to

20   the prudential standing doctrine.

21   ///

22

---

23   [5] Plaintiffs argue that DREES is in a position to request injunctive
     relief above and beyond that which Jankey may request—for example,
24   seeking relief such as large print menus and braille signs for its
     members with visual impairments.  As Defendants point out, however,
25   DREES's only basis for standing in this lawsuit is through its
     member, Jankey.  DREES cannot vindicate hypothetical injuries of
26   other members by attaching itself to Jankey's suit.  <u>See</u> <u>Allen v.</u>
     <u>Wright</u>, 468 U.S. 737, 751 (1984) (a litigant cannot raise another
27   person's legal rights).  Thus, Defendants are correct that DREES does
28   not add anything to the case.

14

**III. CONCLUSION**

    Defendants' motion to dismiss the state law claims and to dismiss DREES as a Plaintiff is GRANTED in full.

        IT SO ORDERED.

DATED: _December 7, 2005_

                                  STEPHEN V. WILSON
                         UNITED STATES DISTRICT JUDGE