ENTERED
CLERK, U.S. DISTRICT COURT

DEC 2 0 2006

CENTRAL DISTRICT OF CALIFORNIA
BY ___ MG ___ DEPUTY

FILED
CLERK, U.S DISTRICT COURT

DEC 1 9 2006

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Priority
Send
Enter
Closed
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LES JANKEY, an individual,      )   CV 05-3856 SVW (JTLx)
                                )
                Plaintiff,      )   ORDER GRANTING IN PART
                                )   PLAINTIFF'S MOTION FOR AWARD
        v.                      )   OF ATTORNEYS' FEES, INCLUDING
                                )   LITIGATION EXPENSES AND COSTS
BEACH HUT, et al.,              )   [55]
                                )
                Defendants.     )
                                )
                                )
_____ )
                                )
                                )
                                )
                                )
                                )

I.   INTRODUCTION

     Plaintiffs Les Jankey ("Plainitff") and Disability Rights,

Enforcement, Education Services ("DREES") alleged that Defendants

Beach Hut, Hermosa Courtyard LLC, and Victor and Angela Romero

(collectively, "Defendants")  violated Jankey's rights under the

Americans with Disabilities Act ("ADA"), Sections 54, 54.1 and 54.3

of the California Civil Code (the "Disabled Persons Act" or "DPA"),

Section 19955 of the California Health and Safety Code, and the

Unruh Civil Rights Act.

69

1   DREES was dismissed by this Court from the action.  The

2   remaining parties ultimately reached a settlement, and this Court

3   signed a consent decree ("Consent Decree") on August 24, 2006.

4   Plaintiff now seeks an award of reasonable attorneys' fees.

5   Plaintiff seeks a total award of $60,737.71 (including fees and

6   costs expended on the instant motion).

7       For the reasons discussed below, this Court GRANTS Plaintiff's

8   motion in the amount of **$13,542.42**.  Defendants shall pay this

9   amount not later than thirty (30) days from the date of this Order.

10

11  **II.   BACKGROUND**

12      **A.   Factual Allegations**[1]

13      Jankey is disabled and confined to a wheelchair.  On or about

14  January 31, 2005, Jankey visited the Beach Hut, a restaurant in

15  Hermosa Beach.  A raised concrete pad prevented Jankey's easy

16  access to the Beach Hut.  Jankey used his wheelchair to jump the

17  concrete pad, sustaining injuries.  The concrete pad was equivalent

18  to a 6-inch curb.  After eating at the Beach Hut, Jankey entered

19  the men's bathroom but was unable to use it because the bathroom

20  lacked handrails and the toilet was low.  Upon leaving, Jankey

21  again navigated the concrete pad, suffering more stress and pain.

22  On or about February 2, 2005, Jankey revisited the Beach Hut and a

23  replay of the January 31 visit ensued.

24      DREES is a non-profit organization with a mission of helping

25  disabled people.  Jankey is a member of DREES.

26  ///

27

28  [1] These facts are taken from the complaint.

2

B.   Procedural History

Plaintiff and DREES filed the instant complaint on June 16, 2005.   Jankey and DREES originally sought (1) injunctive relief and attorneys' fees and costs under the ADA; (2) injunctive relief, statutory damages, punitive damages, costs, prejudgment interest, and general and compensatory damages under the DPA; (3) injunctive relief, attorneys' fees and costs, prejudgment interest, and general and compensatory damages under Section 19955 of the California Health and Safety Code; and (4) statutory damages, attorneys' fees and costs, punitive damages, and prejudgment interest under the Unruh Civil Rights Act.

In December 2005, this Court granted Defendants' motion to dismiss.   As a result, (1) DREES was dismissed for lack of standing, and (2) Plaintiff's state law claims were dismissed because they "substantially predominate[d] over the ADA claim." [Docket No. 22].   A settlement was reached and placed on the record during the first day of trial, on April 25, 2006.   The Consent Decree was signed by the parties in July 2006, and this Court adopted it on August 24, 2006.   [Docket No. 54].

On September 25, 2006, Plaintiff filed the instant motion for an award of reasonable attorneys' fees.   The parties have now fully briefed the Court.


III.      DISCUSSION

A.   Entitlement to Fees

The Court agrees with Plaintiff's contention that he is entitled to an award of reasonable attorneys' fees and costs

3

1  because they are the prevailing parties in this action.  Under the

2  ADA, "in any action or administrative proceeding commenced pursuant

3  to [the ADA]," the district court "in its discretion, may allow the

4  prevailing party... a reasonable attorney's fee, including

5  litigation expenses and costs."  42 U.S.C. § 12205.

6      Under the ADA, a plaintiff is entitled to attorneys' fees only

7  if the plaintiff is the "prevailing party."  A plaintiff is a

8  "prevailing party" if it has obtained relief through an enforceable

9  judgment, consent decree, or judicially enforceable settlement

10  agreement.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of

11  Health & Human Resources, 532 U.S. 598, 604 & n.7 (2001).  In this

12  case, the Plaintiff and the Defendants entered into a Consent

13  Decree in which Defendants promised to take the remedial steps

14  required to bring the Beach Hut into compliance with the applicable

15  law.

16      The fact that Plaintiff did not succeed on his state law

17  claims is immaterial.[2]  The Consent Decree represents "a material

18  alteration of the legal relationship" between the parties.  See

19  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)

20  (quoting Farrar v. Hobby, 506 U.S. 103, 113 (1992)).  "[P]laintiffs

21  may be considered prevailing parties 'if they succeed on any

22  significant issue in litigation which achieves some of the benefit

23  the parties sought in bringing the suit.'"  Rock Creek Ltd. v.

24  _____

25  [2] Although DREES was wholly unsuccessful, only a portion of the
    time spent litigating the motion to dismiss can be attributed

26  solely to this party.  The rest of the litigation was necessarily
    intertwined between the Plaintiff and DREES, and the Court cannot

27  say that other portions of the attorneys' fees were driven up as a
    result of DREES' presence.  As a result, the Court will deduct such

28  hours as appropriate when calculating the lodestar.

4

1  <u>Water Resources Control Bd.</u>, 972 F.2d 274, 279 (9th Cir. 1992)

2  (quoting <u>Texas Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489

3  U.S. 782, 789 (1989)). Accordingly, the Court finds that Plaintiff

4  is entitled to receive an award of reasonable attorneys' fees,

5  litigation expenses, and costs.

6      B.   <u>Amount of Fees: Calculating the Lodestar</u>

7      A reasonable fee award is initially determined by calculating

8  the "lodestar" figure: the number of hours reasonably expended

9  multiplied by a reasonable hourly rate.  <u>City of Burlington v.</u>

10  <u>Dague</u>, 505 U.S. 557, 559 (1992); <u>Hensley v. Eckerhart</u>, 461 U.S.

11  424, 433 (1983); <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397 (9th Cir.

12  1992).  At the outset, "[t]he fee applicant bears the burden of

13  documenting the appropriate hours expended in litigation and must

14  submit evidence in support of those hours worked." <u>Gates</u>, 987 F.2d

15  at 1397.  "Those hours may be reduced by the court where

16  documentation of the hours is inadequate; if the case was

17  overstaffed and hours are duplicated; if the hours expended are

18  deemed excessive or otherwise unnecessary." <u>Chalmers v. City of</u>

19  <u>Los Angeles</u>, 796 F.2d 1205, 1210 (9th Cir. 1986), <u>reh'g denied</u>,

20  <u>amended on other grounds</u>, 808 F.2d 1373 (1987).

21      Additionally, the determination of the number of hours

22  reasonably expended is informed by the factors set forth in <u>Kerr v.</u>

23  <u>Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975).[3]

24  _____

25  [3] The <u>Kerr</u> factors are: (1) the time and labor required; (2) the
    novelty and difficulty of the questions involved; (3) the skills

26  requisite to perform the legal service; (4) the preclusion of other
    employment; (5) the customary fee; (6) whether the fee is fixed or

27  contingent; (7) time limitations imposed by the client or the
    circumstance; (8) the amount involved and the results obtained; (9)

28  the experience, reputation and ability of the attorneys, (10) the

Indeed, the Kerr factors are "intended to provide district courts with guidance in making the determination of the number of hours reasonably expended on litigation and reasonable hourly rate." Chalmers, 796 F.2d at 1211.

The district court is given wide latitude in reducing the fee applicant's compensable hours based on the above criteria. However, the court "must provide an explanation for the reduction." Sorenson v. Mink, 239 F.3d 1140, 11467 (9th Cir. 2001). In affirming the district court's deduction of twenty-seven hours from the plaintiff's fee request, the Ninth Circuit stated:

> We accord considerable deference to the district court's findings regarding whether hours claimed by prevailing counsel are excessive, redundant, or otherwise unnecessary. We do so due to "the district court's superior understanding of avoiding frequent appellate review of what essentially are factual matters." The district court need only provide a "concise but clear" explanation of hours included in the fee award.

Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1047 (9th Cir. 2000) (quoting Hensley, 461 U.S. at 437). In turn, the "concise but clear" language in Hensley has been interpreted to require:

> the district court to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review. Although we

---

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. at 69-70.

1  do not require an elaborately reasoned, calculated or worded

2  order . . . and a brief explanation of how the court arrived

3  at its figures will do, something more than a bald,

4  unsupported amount is necessary.

5  Gates, 987 F.2d at 1398 (internal quotations omitted).

6      Once the district court has established the number of hours

7  reasonably expended, the court must determine a reasonable hourly

8  rate taking into account "the experience, skill, and reputation of

9  the attorney requesting fees." Chalmers, 796 F.2d at 1210.  In

10 making this determination, the district court should look to the

11 rates charged for similar services by comparable lawyers in the

12 relevant community.  Id. at 1210-11.

13     There is a strong presumption that the lodestar represents a

14 reasonable fee.  Dague, 505 U.S. at 562; Gates, 987 F.2d at 1397.

15 However, a court may depart from the lodestar amount if doing so is

16 "necessary to the determination of a reasonable fee." Dague, 505

17 U.S. at 562 (internal quotation and citation omitted).  To the

18 extent the Kerr factors are not addressed in the calculation of the

19 lodestar, they may be considered once the lodestar has been

20 calculated.  Chalmers, 796 F.2d at 1212.  Factors irrelevant to the

21 case need not be considered.  Hensley, 461 U.S. at 363-64.

22     Plaintiff originally sought $43,922.50 in attorneys' fees and

23 paraprofessional time.  The amount is listed as follows[4]:

24

25 [4] The Court independently verified the hours billed by each
26 professional as listed in the itemized billing list found in
   Exhibit C to the Declaration of Jennifer Steneberg, and double-
27 checked Plaintiff's calculations.  The Court has reviewed the
   Declaration of Pepper B. Maupin, and is satisfied that Exhibit C
28 overcomes Defendants' potential evidentiary objections.

| Professional Fees | Hours | Fee | Total |
|---|---|---|---|
| T. Frankovich | 71.1 | $375.00 | $26,662.50 |
| J. Steneberg | 64.3 | $250.00 | $16,075.00 |
| J. Adams | 1.5 | $160.00 | $240.00 |
| M. Martinez | 3.7 | $90.00 | $333.00 |
| C. Cunanan | 0.4 | $40.00 | $16.00 |
| P. Maupin | 8.6 | $40.00 | $344.00 |
| A. Camacho | 0.3 | $40.00 | $12.00 |
| N. Smith | 6 | $40.00 | $240.00 |

Plaintiff has also sought seventeen (17) additional hours for Steneberg's work related to the reply brief for this motion. However, seven of these hours were estimated for travel and time spent at a hearing that this Court took off calendar. As a result, the Court construes the request to only extend to ten (10) hours spent writing the reply brief.[5] The Court will also accept the 1.7 hours billed by Maupin. This leads to a total required amount of $46,490.50 in fees.

### 1.   Reasonableness of Hours Expended

Having examined Plaintiff's itemized billing list in detail, the Court is concerned and finds that a number of hours were clearly unreasonable. As noted, Ninth Circuit precedent "do[es] not require an elaborately reasoned, calculated or worded order," but rather, "a brief explanation of how the court arrived at its figures will do." Gates, 987 F.2d at 1398. Thus, the Court must justify its finding of the reasonable amount of hours expended in a principled manner. However, the Court need not microscopically examine and assess the validity of each billed task.

Frankovich billed 4 hours (including travel time) for inspecting the Beach Hut on February 7, 2005. Frankovich should

---

[5] The $350 estimated for travel expenses to Los Angeles and back to San Francisco is also not appropriate as a result.

8

1  not have taken this trip.  This Court has previously informed

2  Frankovich that such inspections would not be recoverable.

3  Frankovich had already contacted an expert at Access Investigation

4  on February 1, 2005 to perform an inspection of the premises.  This

5  inspection apparently occurred in April 2005, based on the expert

6  billing records submitted to this Court.  (Supp. Steneberg Decl.

7  Ex. B.)  In <u>Jankey v. Oaks Center Properties, Inc.</u>, CV 03-2561 SVW

8  (PLAx) [Docket No. 23], this court denied Frankovich's attempt to

9  recover 7.5 hours billed for a Rule 11 premises inspection, since

10  "photographs could easily have been sent to" him.  Plaintiff's

11  complaint was not filed until June 2005.  As a result, Frankovich

12  should have waited for the expert at Access Investigation

13  Monitoring to submit a report with photographs of the Beach Hut.

14  These 4 hours will be consequently deducted.

15      Frankovich also spent 3.2 hours drafting the complaint and

16  revising it.  Considering the simple nature of the underlying facts

17  in this case, and the fact that Frankovich has likely filed

18  hundreds (if not thousands) of similar lawsuits, the Court finds

19  that no more than 2 hours should have reasonably been expended on

20  drafting complaint.  This is especially true, considering the fact

21  that Frankovich's word processor billed 2 more hours on the

22  complaint as well.

23      Not only did Frankovich unnecessarily travel to the Beach Hut

24  for his Rule 11 inspection, but he then returned to the location

25  <u>two more times</u>.  3.8 hours were billed on March 23, 2006, for

26  travel and for inspecting the Beach Hut.  1.5 hours were billed on

27

28

9

1  April 24, 2006, for yet another inspection.  The Court finds that

2  it was unreasonable to engage in these additional inspections.[6]

3  Importantly, Frankovich and Steneberg have billed their full

4  hourly rate for travel time, including multiple trips between San

5  Francisco and southern California.  Plaintiff relies on <u>Davis v.</u>

6  <u>City of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992) for this

7  proposition.  The Court rejects this argument, and follows the

8  reasoning of Judge Collins for this result.  As she explained, in

9  another recent case also involving Frankovich and Steneberg:

10      <u>Davis</u>, however, is distinguishable from this case, in that the

11      <u>Davis</u> plaintiffs submitted evidence establishing that local

12      attorneys customarily billed their clients for travel time. .

13      . . In this case, by contrast, Plaintiffs have submitted no

14      evidence showing a local customary practice of billing clients

15      for travel time.  Indeed, from this Court's experience, such

16      time is not billable for local attorneys.

17  <u>Molski v. Conrad's Rest. Glendale</u>, CV 04-1075 ABC (PJWx) [Docket

18  No. 103].  In this case, Plaintiff has not submitted any evidence

19  indicating that travel time is billable in the manner desired by

20  Frankovich and Steneberg.  Though this Court already deducted the 4

21  hours billed by Frankovich for travel and inspection on February 7,

22  2005, this Court further deducts all remaining travel time he

23  billed (including the portion of the March 23, 2006 trip to

24  Southern California that was not directed to the Beach Hut

25  inspection).  This amounts to a further deduction of 17.9 hours for

26  Frankovich.  The court also deducts 7.7 hours from Steneberg's

27

---

28  [6] The Court will not deduct the 3.8 hours at this point, but will
    do so when discussing time billed for traveling (below).

1 │ January 25 and 30, 2006 entries (only 0.5 hours is permitted for

2 │ the status conference itself).

3 │     Steneberg also spent a total of 5.4 hours unsuccessfully

4 │ opposing Defendants' motion to dismiss, from October 27, 2005,

5 │ through December 8, 2005.  Plaintiff DREES was entirely dismissed

6 │ from the action as a result of this failure.  Since DREES is not a

7 │ prevailing party, the time spent litigating in this motion on

8 │ behalf of DREES should be deducted.  As an approximation, the Court

9 │ deducts 2.4 hours

10 │     Lastly, the Court finds that Steneberg unreasonably billed ten

11 │ (10) hours for her reply in support of the instant motion for fees.

12 │ Based on this Court's review of the document, including the fact

13 │ that only 8.4 hours were expended in preparing the opening brief,

14 │ only 5 hours was reasonably necessary.[7]

15 │     The Court therefore finds that the lodestar presented in this

16 │ case permits Plaintiff's counsel to bill the following hours: (1)

17 │ Frankovich's hours are reduced from 71.1 to 46.5[8], and (2)

18 │ Steneberg's are reduced from 74.3 to 59.2.[9]

19 │ ///

20 │ ///

---

21 │ [7] Time billed for litigating a fees motion is recoverable, See
22 │ Kinney v. Int'l Bros. of Elec. Workers, 939 F.2d 690, 695 (9th Cir. 1991), so long as the time billed is reasonable.
23 │ [8] As to Frankovich, the Court has deducted the following hours based on the following entries: (1) 4 hours for 2/7/05, (2) 1.2
24 │ hours for 4/29/05, (3) 3.5 and 1.7 hours from 3/20/06, (4) 3.8 hours from 3/23/06, (5) 2 hours from 3/24/06, (6) 3 and 1.5 hours
25 │ from 4/24/06, and (7) 3 and 0.9 hours from 4/25/06.  This
26 │ represents a total deduction of 24.6 hours.
    │ [9] As to Steneberg, the Court has deducted: (1) a total of 2.4 hours
27 │ for entries 10/27/05, 11/7/05, and 12/8/05, (2) 0.2 hours for 1/25/06, (3) 7.5 hours for 1/30/06, and (4) 5 hours for the reply
28 │ brief.  This represents a total deduction of 15.1 hours.

## 2.   Hourly Rate

"[W]hether or not [the client] agreed to pay a fee and in what amount is not decisive. . . . The criterion for the court is not what the parties agreed but what is reasonable." Id. at 1385 (9th Cir. 1984) (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 718 (5th Cir. 1974)).  A reasonable hourly rate is determined by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984).

The Court finds that the billing rates for Frankovich ($375) and Steneberg ($250) were reasonable given their experience and expertise in this area of the law.  The Court also has no qualm with Ms. Adams' billing rate of $160, herself a junior attorney, who only billed 1.5 hours related to this case.  The same is true of the rate charged by the paraprofessionals in this case, which ranged from $40 to $90.  Although Defendants complain about the manner by which Plaintiff attempted to establish these billing rates as reasonable, Defendants never themselves claimed what a "reasonable" billing rate would be.  As a result, these rates are adopted by the Court.  The Court finds these rates to be reasonably representative of the prevailing market rates, based on its own experience in these types of cases and because these rates have been approved by other courts in this district.

## 3.   The Calculation

After these initial cuts, the initial total would be as follows:

| Professional Fees | Hours | Fee | Total |
|---|---|---|---|
| T. Frankovich | 46.5 | $375.00 | $17,437.50 |
| J. Steneberg | 59.2 | $250.00 | $14,800.00 |
| J. Adams | 1.5 | $160.00 | $240.00 |

| M. Martinez | 3.7 | $90.00 | $333.00 |
| C. Cunanan | 0.4 | $40.00 | $16.00 |
| P. Maupin | 10.3 | $40.00 | $412.00 |
| A. Camacho | 0.3 | $40.00 | $12.00 |
| N. Smith | 6 | $40.00 | $240.00 |
| TOTAL | | | **$33,490.50** |

However, the Ninth Circuit has made clear that "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." <u>Gates</u>, 987 F.2d at 1399. The failure to exercise billing judgment inevitably tends to "impugn the integrity of counsel" and invites the district court to slash the claimed hours in order to ensure that suspected excessiveness and duplication in the application are fully eliminated. <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, 1385 (9th Cir. 1984). The Court has already deducted approximately 30% of Plaintiff's fees due to unreasonable billing practices. Based on the pattern this Court has identified, it is proper to deduct an additional 35% to arrive at the appropriate lodestar figure. This leads to a lodestar figure of $21,768.83.

### C. Other Considerations

#### 1. Reduction for Partial Success

An award of fees "must be reduced to reflect the limited degree of [] success." <u>LeMarie v. Maass</u>, 12 F.3d 1444, 1461 (9th Cir. 1993). The instant case is similar to <u>Harris v. Marhoefer</u>, 24 F.3d 16 (9th Cir. 1994). In <u>Harris</u>, the Ninth Circuit upheld a district court's 50% lodestar reduction where Plaintiff only succeeded in obtaining a judgment of $25,000, though Plaintiff sought $5 million. <u>Id.</u> at 18. The <u>Harris</u> plaintiff not only

1  failed to obtain the amount desired, but also was unsuccessful

2  against five of six defendants.  Id. at 17.

3       The Court finds that the lawsuit achieved only limited

4  success.  DREES was completely dismissed from the case.

5  Plaintiff's state law claims were all dismissed for lack of subject

6  matter jurisdiction, and he ultimately accepted a dismissal with

7  prejudice in exchange for the Consent Decree.  These are the same

8  state law claims that this Court previously remarked "substantially

9  predominate[d] over the ADA claim."  While the state law claims

10 could have resulted in a substantial monetary judgment from

11 Plaintiff, the ADA claim offers no such relief.

12      Given Harris, the court finds that a 60% reduction is

13 necessary in light of the overall degree of success evidenced by

14 this lawsuit's result.  The Consent Decree is certainly

15 significant, but so were the state law claims.  The lodestar amount

16 of $21,768.83 must therefore be reduced to $8,707.53.

17            2.   Pre-Investigation Demand Letter

18      Defendants argue that Plaintiff should be denied attorneys'

19 fees in their entirety because no pre-litigation demand letter was

20 sent to the Beach Hut.  Defendants argue that there is an important

21 policy behind such a rule: a party should have a chance to become

22 ADA compliant before facing the costs of litigation.  In this case,

23 Plaintiff sent a letter to Defendants before filing suit, but it

24 could hardly be categorized as a demand letter.  (See Schamlz Decl.

25 Ex. 1.)

26      In Doran v. Del Taco, Inc., 373 F. Supp. 2d 1028 (C.D. Cal.

27 2005), another judge of this Court held that "it is a proper

28 exercise of discretion and common sense in an ADA case or a

                              14

1  parallel state case to require, as a prerequisite to recovering
2  attorneys' fees, a pre-litigation unambiguous warning notice to the
3  defendant and a reasonable opportunity to cure the violation." <u>Id.</u>
4  at 1033.  This Court respectively disagrees with <u>Doran</u>.  As
5  explained in <u>White v. Save Mart Supermarkets</u>, 2005 WL 2675040 (E.D.
6  Cal. Oct. 20, 2005), the Ninth Circuit has held to the contrary.
7  As <u>Doran</u> conceded, the Ninth Circuit held in <u>Botosan v. Paul</u>
8  <u>McNally Realty</u>, 216 F.3d 827, 832 (9th Cir. 2000), that no pre-suit
9  notice is required.  Efforts to amend the ADA in this manner have
10 failed repeatedly.  <u>See Doran</u>, 373 F. Supp. 2d at 1031.

11       In any event, even if this Court could require pre-suit
12 notice, it would be inequitable to do so in this case.  Plaintiff's
13 complaint was filed in June 16, 2005, which was one week after
14 Doran was decided.  However, it was actually lodged with the Court
15 on May 30, 2005, pending this Court's permission to file the
16 lawsuit.  It would be unfair to retroactively hold Plaintiff
17 accountable to <u>Doran</u>'s "novel reasoning."  <u>See Jankey v. Ranch</u>
18 <u>House BBQ & Grill</u>, 2005 WL 3478138, at *2 (C.D. Cal. 2005 Dec. 14,
19 2005).

20       Thus, the lack of an unambiguous pre-suit demand letter does
21 not bar Plaintiff's recovery.

22            3.   Rejection of Rule 68 Offer of Judgment
23       Rule 68 provides that:
24       At any time more than 10 days before the trial begins, a party
25       defending against a claim may serve upon the adverse party an
26       offer to allow judgment to be taken against the defending
27       party for the money or property or to the effect specified in
28       the offer, with costs then accrued. . . .  An offer not

accepted shall be deemed withdrawn and evidence thereof is not
admissible except in a proceeding to determine costs. If the
judgment finally obtained by the offeree is not more favorable
than the offer, the offeree must pay the costs incurred after
the making of the offer.

In detailing the scope of Rule 68, the Supreme Court has held
that "absent congressional expressions to the contrary, where the
underlying statute defines 'costs' to include attorney's fees, we
are satisfied such fees are to be included as costs for purposes of
Rule 68." Marek v. Chesny, 473 U.S. 1, 9 (1985). Plaintiff seeks
attorneys' fees under 42 U.S.C. § 1988. This section defines fees
"as part of the costs" of litigation. As a result, Section 1988
fees are "such fees [that] are subject to the cost-shifting
provision of Rule 68." Marek, 473 U.S. at 9.

In this case, Defendants made Plaintiff an "offer of judgment"
pursuant to Rule 68 on March 22, 2006. This offer was rejected.
Defendants claim that they are entitled to the cost-shifting
feature of Rule 68, because they believe that the ultimate
settlement, as evidenced by the Consent Decree, was less favorable
than the offer of judgment.[10] See Lang v. Gates, 36 F.3d 73, 77

---

[10] Defendants also claim that Plaintiff should not be able to
recover fees because Defendants made "reasonable offers" to settle
the case beginning in January 2006. However, even if Defendants'
claim is to be believed, Plaintiff's failure to obtain a better
result than a non-Rule 68 settlement offer is not a basis for
denying attorneys' fees incurred after that date. There are
critics who complain that "the lodestar method gives attorneys an
incentive to increase their billable hours by delaying settlement
as long as possible." In re Prudential Ins. Co. Am. Sales Practice
Litig. Agent Actions, 148 F.3d 283, 333 n.108 (3d Cir. 1998).
However, this criticism of the system does not authorize this Court
to punish a Plaintiff for not accepting a settlement offer earlier
on in the litigation, except in the possible instance of a Rule 68

1  (9th Cir. 1994) ("To preserve and to promote the purposes of Rule

2  68, the phrase 'judgment finally obtained' certainly would

3  encompass an order finally terminating the litigation as a result

4  of settlement."). It is therefore necessary for this Court to

5  compare the Consent Decree with the March 22, 2006, Offer of

6  Judgment. It is "the defendant [who] bears the burden of showing

7  that the Rule 68 offer was more favorable than the judgment."

8  Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 231 (2d

9  Cir. 2006).

10      Part of Defendants' Offer of Judgment was a provision limiting

11  Plaintiff's recovery of fees and costs to a total of $5,500. The

12  Consent Decree did not contain any such limitation. Defendants

13  claim that this difference is "not relevant for the purposes of

14  determining whether [Plaintiff] ultimately achieved more in the

15  settlement than he would have otherwise achieved by accepting

16  Defendants' Offer of Judgment." (Defs. Opp. at 16.) The Court

17  disagrees. Defendants frequently cite to Solomon v. Onyx

18  Acceptance Corp., 222 F.R.D. 418, 420 (C.D. Cal. 2004), in their

19  opposition. However, Defendants have noticeably omitted Judge

20  Cooper's analysis of precisely this question:

21      The offer of judgment was for $15,000; the settlement was for

22      $3,000. Without a doubt, the offer of judgment exceeded the

23      settlement figure. However, these figures are misleading

24      because the offer of judgment included attorneys' fees and

25      costs. The settlement figure excluded attorneys' fees and

26

27  ─────────────
    offer of judgment. Defendants could have made an offer of judgment
    in January 2006. It was their decision to wait two more months to
28  do so.

17

costs. Therefore, in order to compare the two figures to

determine whether the cost-shifting provision of Rule 68

applies, <u>the Court must determine an amount of reasonable

attorneys' fees and costs incurred as of the date of the offer

of judgment</u>. The Court will then subtract that figure from the

$15,000. If the resulting figure is greater than $3,000, the

cost-shifting provision of Rule 68 applies.

<u>Id.</u> at 422 (emphasis added).  As a result, this Court is required

to consider the reasonable attorneys' fees and costs that Plaintiff

was entitled to, as of the date of the Offer of Judgment, in order

to evaluate whether the Offer of Judgment was more favorable than

the Consent Decree's terms.  In fact, the Court believes that its

analysis must evaluate <u>all</u> differences between the Offer of

Judgment and the Consent Decree.  To this end, the Court offers the

following chart to facilitate this comparison.

| Issue | Offer of Judgment (March 22, 2006) (Schmalz Decl. Ex. 10.) | Consent Decree (July/August 2006) (Steneberg Decl. Ex. A.) |
|---|---|---|
| (1) Denial of Liability | Defendants Offer to settle "without admitting any liability" | Defendants expressly "deny any and all legal or equitable liability." |
| (2) Ramp Installation | Same terms | Same terms |
| (3) Entrance/ Front Doors | Door equipped with double or full-swing hinges so that door opens in either direction | Door pressure reduced to open at 5 pounds or less, provided that repair is inexpensive and easy to accomplish |
| (4) Doorbell/ Sign | No provision | Install buzzer/doorbell at the corner of the building adjacent to the ramp at the sidewalk which is clearly identified |

| | | with a sign that reads "Please ring for employee assistance" |
|---|---|---|
| **(5) Restroom Modifications** | Same terms | Same terms |
| **(6) Requirement of Restroom Modifications** | Option to repair, or to close the restroom to the public | No option to close the restroom in order to avoid repairs |
| **(7) Plaintiff's dismissed state claims** | No provision | Forever barred by entering into the Consent Decree |
| **(8) Fees/Costs** | Limited to $5,500 | Court will decide the reasonable fees and costs |

Defendants claim that their express denial of liability represents a better "result" than the language of the Offer of Judgment. Not only does the Court view the relevant language as essentially indistinguishable, but Defendants have not provided this Court with any method of quantifying the difference. The Court finds that the provision of a doorbell/sign and the requirement that restroom be open to the public weighs in favor of finding that the Consent Decree is somewhat more favorable than the Offer of Judgment. The Offer of Judgment and Consent Decree bear some differences in terms of the repairs to be made to the entrance door of the restaurant. However, the Court cannot say with any confidence that one door is better than the other.

This leads the Court to Plaintiff's dismissed state law claims. It is certainly the case that the Consent Decree was less favorable to Plaintiff, because he was required to discharge his state law claims, which had been dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1367. However, as noted above, Defendants have the burden of proving that the Consent

Decree is not more favorable than the Offer of Judgment. Defendants have not provided this Court with a reasonable method for approximating the value of Plaintiff's state law claims. It is true that Plaintiff sought a significant amount (e.g., $16,000), but a settlement offer cannot possibly be construed as representing the claims' actual worth. As a result, this Court will not speculate as to the dismissed claims' possible worth.

The Offer of Judgment limited Plaintiff to the recovery of $5,500, including fees and other litigation costs. The Consent Decree authorizes this Court to determine the reasonable fees and costs. As of March 22, 2006, Frankovich billed 28.6 hours and Steneberg billed 34.8 hours. In order to reach the lodestar calculation, Frankovich's hours must first be reduced to 18.2 and Steneberg's to 24.7 (in light of the Court's specific cuts). When employing their respective rates of $375 and $250, this yields a potential sum of $13,000 (plus $288 for paraprofessional fees). This amount must also be reduced by the 35% figure utilized to account for Plaintiff's practice of engaging in excessive billing, leading to a total of $8637.20. And in order to account for the lawsuit's limited success, this total must be discounted by 60% to $3454.88.

This amount must then be added to the reasonable costs owed as of March 22, 2006. Plaintiff claims they are owed $4,489.89 in costs as of this date. As explained below, the Court deducts $241.70 for the improper billing for the January 30, 2006, status conference. The Court further imposes a 60% deduction for a total of $1,699.28 in allowable costs. This results in a total reasonable fee award of $5,154.16 as of the Offer of Judgment.

1       On the whole, the Court finds that the nonmonetary relief is

2   more favorable in the Consent Decree than it was in the Offer of

3   Judgment.  But the Consent Decree is less favorable to Plaintiff in

4   some degree because he was required to discharge his state law

5   claims, but this Court cannot guess what these claims were worth.

6   Finally, the provision of fees and costs in the Consent Decree is

7   slightly less favorable than that in the Offer of Judgment.  Based

8   on the above, it would simply be speculative for the Court to

9   balance these issues and decide whether the Consent Decree was "not

10   more favorable" than the Offer of Judgment.  Defendants have not

11   met <u>their burden</u> in providing this Court with the necessary tools

12   for evaluating the nonmonetary benefits/negatives.  For this

13   reason, Rule 68's cost-shifting feature <u>does not</u> inure to the

14   benefit of the Defendants.

15       D.   <u>Costs</u>

16       Plaintiffs, as prevailing parties, are entitled to recover

17   their costs and litigation expenses.  See 42 U.S.C. § 12205.

18   Plaintiffs seek to recover a total of $12,570.61 in costs.[11]  By

19   nature of litigation, certain costs, such as those for a filing

20   fee, service of process, messenger services, and travel, are

21   unavoidable.  Plaintiff seeks travel expenses of $1,208.85, which

22   are essentially comprised of five (5) round trips from San

23   Francisco to Los Angeles (4 by Frankovich and 1 by Stenberg).  The

24   Court has already explained that the Rule 11 inspection by

25   Frankovich was improper, as well as Steneberg's personal appearance

26   

27   [11] As discussed before, the estimated $350 for travel costs to
attend the hearing regarding this motion are inapplicable because

28   the Court took this motion under submission without such a hearing.

at the statue conference.  The Court deducts 40%, or $483.40, for
these two trips.  Otherwise, the Court has no qualm with
Plaintiff's other costs, and recognizes that experts are needed in
these types of case.

     As with the fee award, the Court deducts 60% to account for
the case's limited success.  See Cummings v. Connell, 316 F.3d 886,
899 (9th Cir. 2003) ("[T]he district court may reduce costs to
reflect limited success on the merits.").  This results in a cost
award of $4,834.89.

## IV.  CONCLUSION

     By this Court's calculations, Plaintiff sought fees and costs
in the amount of $60,737.71.  For the foregoing reasons, this Court
GRANTS Plaintiff's motion for: (1) $8,707.53 in fees, and (2)
$4,834.89 in costs.  This represents a total allowable recovery of
**$13,542.42**.  Defendants shall comply pay this amount within thirty
(30) days of the date of this Order.


IT IS SO ORDERED.


DATED:  _12/14/06_


_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE